Argued and submitted July 11, 2000, affirmed July 5, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# CATHERINE A. GREY,
*Appellant.*

## 98-10-49448; A106924

28 P3d 1195

Clint A. Lonergan argued the cause for appellant. With him on the brief was Richard L. Lonergan.

Jennifer Scott Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge,* and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

---

* Haselton, P. J., *vice* De Muniz, J., resigned.

## WOLLHEIM, J.

Defendant appeals her conviction for harassment. ORS 166.065. The issue before us is whether the trial court properly admitted evidence of defendant's prior arrest and conviction for theft in the third degree and an arrest for driving while under the influence of intoxicants (DUII). We conclude that the evidence was properly admitted and affirm.

Because the jury found defendant guilty, we present the facts pertaining to the crime for which defendant was convicted in the light most favorable to the state. *State v. Tucker*, 315 Or 321, 325, 845 P2d 904 (1993). Defendant lived in Japan from her birth until the age of 18, when she moved to the United States with her parents. Upon her arrival, she attended an English-language high school and received her diploma. Defendant then began taking college courses at the Pacific Northwest College of Art in Portland.

In October 1998, defendant and her boyfriend, Nowak, attended a party at a friend's house. There, defendant had a single drink while Nowak had a substantial amount more. The couple left the party after a few hours and returned to their apartment. Nowak then began to feel ill. Defendant took a bath and, afterwards, discovered that Nowak had thrown up. As defendant began cleaning up the mess, Nowak became angry and started yelling and throwing things. Someone else telephoned the police and reported a domestic disturbance.

Officers Johns, Rabey, and Engen responded to the call. When they arrived, from the street they could hear defendant and Nowak yelling at each other. After the officers located the apartment and knocked, Nowak answered the front door, stepped outside and began crying and apologizing. Johns entered the apartment to verify that no one there was injured, while Rabey and Engen remained outside with Nowak. Defendant showed Johns around the apartment and was cooperative and quiet at that time.

Johns then decided to take Nowak to detox. At that point, Johns and Engen were with Nowak just outside the front door and Rabey was blocking the doorway. Nowak

became very upset and began yelling obscenities when Johns and Engen started to handcuff him. Upon hearing the yelling, defendant, who was inside the apartment, tried to make her way around Rabey. Rabey stopped defendant and asked her to go back into the apartment and to sit down. As Rabey was escorting defendant back into the living room, defendant began to push and shove Rabey in an effort to get outside. Defendant asked Rabey where they were taking Nowak. Rabey answered, "He's going to detox." Asked where detox was, Rabey replied, "That's not important right now." Defendant then began screaming and flailing her arms. Engen saw the commotion in the apartment and left Johns and Nowak to help Rabey. Engen, Rabey, and defendant struggled in the living room and the officers eventually brought defendant down to the floor and handcuffed her. Rabey's police jacket was torn from the armpit to the waist in the struggle. Defendant was arrested and was later charged with attempted assault of a public safety officer, ORS 163.208, and harassment by subjecting Rabey to "offensive physical contact," ORS 166.065(1)(a)(A).

Immediately preceding the commencement of trial, the state objected to the representations made by defense counsel during *voir dire* concerning the type of evidence the defense was going to present. When the trial court asked what that evidence would consist of, defense counsel replied

"The cultural stuff? Basically, I want to talk about how the police, that the entire mind set of the culture that she's from is different. In other words, the police in Japan do not act like police here. The society is built around a great reverence for authority, and the fact that the police officers in this case—and to understand what's going through her mind you have to understand the culture she comes from."

The trial court concluded that the evidence would be relevant to intent and that it would be admitted.

During his opening statement, defense counsel explained the cultural background aspects of the defense theory to the jury.

"Now what you will learn is that what you are and what you are thinking and what's going on in your mind, you cannot divorce what you are from what you are thinking. So the

cultural aspects that we are going to present will become important. When I say the cultural aspects, what you are going to find from [defendant's father], her father's testimony and from [defendant's] testimony is essentially the police here in the United States are quite different from the police in Japan, and the culture in Japan is quite different from the culture here in the United States.

"In Japan there's an ultimate sort of respect for authority, to the point where most of us would think, you know, how could you let the government tell you what to do like that. Our mind set is sort of the opposite. In other words, we don't just accept immediately what the government says or some person in authority.

"Japan is somewhat different. It is a society that has an ultimate respect for authority and for police. At the same time, the culture also is reciprocal, in that you will not see police officers in Japan swearing at people. You will not see them being impolite. The politeness and respect that they are shown is returned, and that's what you are going to find in this case about [defendant] and how it's so difficult for her to understand what's going on and what these police officers are doing."

The prosecutor did not raise the cultural background issue during the presentation of the state's case. The second witness to testify for the defense was defendant's father. He described his background and how he came to live in Japan for 25 years. He then described cultural differences between Japan and the United States. In particular, defendant's father explained how the two cultures possess differing concepts of community, individuality and the role and function of the police. He then testified about defendant's English language abilities and limitations and about how he helped defendant following her arrest.

Before cross-examining defendant's father, the prosecutor requested a conference with the judge. The following discussion ensued out of the presence of the jury:

"[PROSECUTOR]: Your Honor, as we discussed at side bar, I believe that through this witness an inference has been tended to the jury that in fact the defendant does not understand interaction with American or western

police officers. I would ask that I be allowed to cross examine the basis for that opinion and rebut that inference through her prior police contacts.

"[DEFENSE COUNSEL]: It's inadmissible, prior police contacts. What police contacts? What were the police contacts, what was said, v hat wasn't said. I mean, basically, unless somehow what is admissible of course has to do with prior convictions and nothing would fall under that exception, he's trying to show some other thing. I don't know what it is, motive.

"THE COURT: Okay. I'm not sure what you can accomplish with this witness.

"* * * * *

"[PROSECUTOR]: It's the basis of his opinion. If he is not knowledgeable of these events, then it goes to the credibility of his opinion.

"* * * * *

"THE COURT: I'm not going to allow you to raise those inferences unless you tell me you can bring in somebody uninvolved that's going to establish these facts. I think you've got a point as to the opening of the door that has been created if there's been previous police contacts and you can prove it through something other than documents. You know, if she takes the witness stand, that's something to pursue.

"* * * * *

"[DEFENSE COUNSEL]: I'll object to it. I think it's irrelevant and I know of no basis to make it relevant. I mean, basically what they are going to do is try and show that she's had some sort of prior contact with police. So what? We have prior contacts, priors cases all the time where people, it's not their first contact with police.

"THE COURT: I understand. But you've made an issue of it.

"[DEFENSE COUNSEL]: I made an issue of the fact she doesn't understand English as well, * * * and doesn't always use the right word is an issue in the case.

"THE COURT: You made an issue in your opening statement and through this witness that there's a difference in the way police behave in Japan and here and, therefore, she behaved in a certain way on this occasion. That has nothing to do with necessarily the language.

"[DEFENSE COUNSEL]: Quite frankly, I think it does. It basically has to do with a cultural difference. I mean, basically you can't separate the two.

"THE COURT: That's not language. I'm going to allow the DA to pursue it if he finds a way to do it. Not with this witness, I don't think, because I don't know what you can establish with this witness. But if you have a rebuttal witness, and especially if it's going to be cross examination with defendant, you might be able to establish various things.

"[PROSECUTOR]: Thank you, Your Honor.

"[DEFENSE COUNSEL]: I'd just like an objection to that.

"THE COURT: You have your objection, but I haven't heard anything that's a basis for it. Once you have chosen to make this an issue, her lack of understanding of how the police in this country operate, and that is not necessarily based on language and certainly based on this witness's testimony is not based on language much at all.

"[DEFENSE COUNSEL]: Basically I disagree. I think it's far too prejudicial. Basically, it's going to be designed essentially to decide that well, she had prior contact with the police; therefore, she's a criminal and I don't think it falls within—I don't know what any basis to admit another contact with the police in some other case has to do with the relevancy of this case.

"THE COURT: Impeaching evidence. I'm going to allow him to do it if he can find a way to do it."

During his cross-examination of defendant's father, the prosecutor inquired whether it was appropriate in Japan to grab a police officer's uniform in such a manner as to tear the officer's clothing. Defendant's father testified that he did not think so.

Defendant then testified on her own behalf. On cross-examination of defendant, the prosecutor inquired into the cultural background issue:

"Q [Defendant], isn't the testimony in this case that you don't understand the way American police operate? They are different from Japanese police, is that correct?

"* * * * *

"A Yes.

"* * * * *

"Q In fact, hadn't you had contact with American police in the past in Hillsboro, Oregon?

"* * * * *

"A Yes, but not to this degree.

"Q In Hillsboro, Oregon, weren't you arrested for theft in the third degree and convicted of that count on April 19 of 1994?

"* * * * *

"A Yes.

"Q Were you also arrested on December third of 1994 in Portland, Oregon on Hawthorne Boulevard for driving under the influence and had contact with the police there?

"A Yes.

"Q Is it your testimony that even after these other two contacts with the police you still didn't understand how American police work?

"A Yes. Not in domestically.

"Q Not in what?

"A Not for—what is your question again?

"Q After having these prior contacts with the police in this country, is it your testimony today that after having been arrested twice, you don't understand how American police operate?

"A No. Not in this setting. In this case, I have not."

The prosecutor then continued with questions about defendant's education and the apartment where the incident occurred.

After the conclusion of testimony, defense counsel again objected to the admission of the state's evidence about prior contacts with the police.

"[DEFENSE COUNSEL]:   First of all, I would object to the—we had discussion in chambers, obviously, in regard to the admissibility of the District Attorney's presenting evidence through his testimony, through his words of a prior conviction of an alleged Theft 3. I, at this point, do not know whether or not it's actually a crime at all. It may well be a violation, as often Theft 3s are.

"I would also object to the introduction of evidence regarding prior contacts with the police. I think it's irrelevant. I think it denies due process. In addition, I think it is all really prejudicial, and as a result should not have been admitted and the questions should not have been allowed. Thank you.

"THE COURT:   And my ruling was that if the Theft 3 conviction was a crime, it certainly is an impeachable offense, and if it was not a crime and was somehow treated as a violation or entered as a violation, it is still relevant for the same reason the other police contacts were relevant here, given the defense as expressed both in opening, or in *voir dire*. I'm not sure where it came in. But the defense theory of the case being that defendant has a problem understanding traditions with American police and how they operate. So for those reasons, I thought the state was entitled to cross examine on those issues."

In his closing argument, the prosecutor told the jury that defense counsel presented several "red herring" arguments during the trial that were meant to distract them. The prosecutor argued that some of the red herring arguments involved the cultural background issue.

"The next red herring: Her father testified well, the police are so different in Japan she wouldn't have understood what was going on, it would have been surprising to her how the police acted, it would have been something brand new and frightening to her. Red herring. That's wrong. She knew exactly how American police operated.

She had been arrested twice before. She knew exactly what the American police do. It's disingenuous to insinuate this was a grand cultural difference and was incredibly surprising to her. That's not going on here.

"* * * * *

"Another red herring. We came back to it again and again in the defense's case. Did you ever say you are under arrest. Two responses to that: One, she knew exactly she was under arrest. She had been arrested twice before and she had hit a police officer in the face and she was being taken down to the ground in handcuffs. Two, she's not being charged with resisting arrest. She's being charged with the initial attack where she hits and grabs."

The jury found defendant guilty of harassment and not guilty of attempted assault on a public safety officer.

Defendant then moved for a new trial pursuant to ORCP 64 B(6).[1] Defendant argued that the court erroneously admitted evidence of defendant's prior conviction and arrest. That argument was premised on defendant's belief that the trial court admitted the evidence pursuant to OEC 404(3)[2] and that the evidence was admitted to show defendant's intent. The trial court denied defendant's motion. In the opinion and order denying motion for new trial the court explained,

"As far as this court now recalls, this court did *not* rely on OEC 404(3) for the admissibility, and admission into evidence, of either the conviction for theft or the arrest for DUII. They were admitted to allow the jury to infer that she had some knowledge of American police procedures and behavior." (Emphasis in original.)

---

[1] ORCP 64 B(6) provides that a judgment from a jury trial may be set aside and a new trial granted where an "[e]rror in law occurring at the trial and objected to or excepted to by the party making the application[ ]" materially affects the substantial right of a party. ORS 136.535(4) provides that ORCP 64 B, among other provisions, "shall apply to and regulate new trials in criminal actions[.]"

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The trial court also cited OEC 609 as a basis for admitting the conviction for theft[3] and explained that both the conviction and the arrest evidence were admitted as evidence tending to undercut the defense theory and to impeach defendant's testimony.

■ Defendant appeals, assigning as error the trial court's admission of the conviction and arrest evidence and the trial court's dismissal of defendant's motion for a new trial. A denial of a motion for a new trial made after entry of judgment is not reviewable on appeal unless it is based on newly discovered evidence or evidence of juror misconduct. *State v. Sullens*, 314 Or 436, 440-43, 839 P2d 708 (1992). Defendant's motion failed to raise either of those grounds as the basis for a new trial, and accordingly we decline to review that assignment of error. *See State v. Mayer*, 146 Or App 86, 88, 932 P2d 570 (1997) (declining to review a denial of motion for new trial for same reason). Defendant did, however, make a contemporaneous objection to the evidence in question. As noted above, her attorney argued that the evidence was not relevant, was overly prejudicial, and was "designed to decide that well, she had prior contact with the police; therefore, she's a criminal[.]" That objection was sufficient to put the court on notice that defendant was objecting to the evidence on the ground that it was impermissible character evidence that should be excluded under OEC 404. We therefore turn to the admissibility of the evidence under OEC 404 and OEC 609.

■ We review determinations of whether evidence qualifies for admission for errors of law. *State v. Arellano*, 149 Or App 86, 90, 941 P2d 1089 (1997), *rev dismissed* 327 Or 555 (1998).

■ We first address the admissibility of the conviction evidence. The trial court explained that it relied on OEC 609

---

[3] OEC 609 provides, in part:

"(1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (b) involved false statement or dishonesty."

to admit the conviction evidence.[4] OEC 609 provides that evidence that a witness has been convicted of a crime is admissible if (1) it is for the purpose of attacking the credibility of that witness; (2) the evidence is elicited from the witness or established by a public record; and (3) the crime for which the witness was convicted was punishable by death or imprisonment in excess of one year or the crime involved false statement or dishonesty.

Concerning the first requirement, that evidence be used for the purpose of attacking defendant's credibility, defendant argues that the state's sole interest in submitting the conviction evidence was to convey to the jury that defendant is a "bad person" and that "OEC 608 and 609 make it clear that an arrest cannot be used for attacking a person's character." The state argues that it submitted evidence of the conviction, not to attack defendant's character, but rather to attack her credibility by challenging her testimony that she had difficulty understanding how American police officers act. We agree with the state that evidence that defendant had been previously convicted of a crime weakens the credibility of her testimony that she was unfamiliar with American police practices and satisfies the first requirement of OEC 609.

The record further indicates that the second requirement is satisfied because the prosecutor elicited the conviction evidence from defendant while she was testifying before the trial court.

The remaining question concerning the conviction evidence is whether the conviction for theft satisfies the last requirement of OEC 609. Theft in the third degree is a Class C misdemeanor that is not punishable by imprisonment in excess of one year. *See* ORS 164.043; ORS 161.615 (maximum limitation for prison term for Class C misdemeanor is 30 days). Nevertheless, in *State v. Gallant*, 307 Or 152, 157, 764 P2d 920 (1989), the Supreme Court held that, for purposes of OEC 609(1)(b), theft constitutes a crime involving dishonesty. Consequently, all of the OEC 609 requirements are satisfied in this instance.

---

[4] The DUII arrest did not result in a conviction and therefore OEC 609 is not applicable to that evidence.

Defendant argues that there must be "some logical nexus between the facts of the prior bad act and the facts in this present case." The provisions of OEC 609 contain no such requirement. Similarly, the provisions of OEC 609 do not contain a requirement for the court to weigh the probative value of evidence versus the danger of unfair prejudice in a manner similar to that required by OEC 403.[5] *See State v. King*, 307 Or 332, 337, 768 P2d 391 (1989) (in the context of OEC 609, balancing under OEC 403 is impermissible). Defendant's arguments are unavailing.

We therefore conclude that the trial court properly admitted the evidence of defendant's prior conviction for theft in the third degree.[6]

We next address the admissibility of the arrest evidence. When the prosecutor first raised the issue that the state wanted to submit evidence of defendant's prior conviction and arrests, before he cross-examined defendant's father, defendant objected that the prosecutor was introducing that evidence for the purpose of showing that defendant "had prior contact with the police; therefore she's a criminal[.]" By making that contemporaneous objection, defendant raised the issue of the admissibility of uncharged misconduct evidence[7] under OEC 404, the evidence rule that addresses the admission of character evidence and evidence of other crimes, wrongs or acts.[8] Defendant notes that OEC 404(2) provides that "[e]vidence of a person's character is not admissible for the purpose of proving that a person acted in

---

[5] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[6] Because the evidence of defendant's prior conviction was admissible under OEC 609, we need not address whether it was also admissible on other grounds.

[7] "The phrase 'uncharged misconduct evidence' denotes crimes, wrongs, or acts that are not charged in the indictment for which the defendant is currently on trial." *State v. Pinnell*, 311 Or 98, 103 n 4, 806 P2d 110 (1991).

[8] As a preliminary matter, the state argues that defendant did not preserve an objection to admission of the evidence under OEC 404. The trial transcript indicates otherwise. Furthermore, the state argues that defendant's arrest for DUII was not a "crime, wrong or act" under OEC 404 and, therefore, that rule does not apply here. We disagree.

conformity therewith on a particular occasion." Certain character evidence (namely evidence of "other crimes, wrongs or acts"), however, may be admissible for other purposes, such as those enumerated in OEC 404(3). Defendant argues that none of the enumerated purposes apply here. The state contends that the trial court properly admitted the evidence of defendant's prior police contacts. Specifically, the state argues that the arrest evidence was admissible because it showed that defendant had knowledge of American police procedures and behavior and that it rebutted defendant's testimony to the contrary. The state further argues that, because the evidence was relevant under OEC 401,[9] the trial court properly admitted the arrest evidence.[10]

We follow a three-part test to determine the admissibility of uncharged misconduct evidence in general. *State v. Bracken*, 174 Or App 294, 299, 23 P3d 417 (2001). The requirements of that test are:

> " '(1) The evidence must be independently relevant for a noncharacter purpose * * *; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct must not be substantially outweighed by the dangers or considerations set forth in OEC 403.' " *State v. Hampton*, 317 Or 251, 254, 855 P2d 621 (1993) (quoting *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992)).

Under certain contexts, the first requirement of the uncharged misconduct evidence test (*Hampton* test) will incorporate additional factors. *See State v. Rinkin*, 141 Or App 355, 368 n 7, 917 P2d 1035 (1996) (stating that the first requirement of the test can incorporate other relevancy factors); *see also State v. Pinnell*, 311 Or 98, 109-11, 806 P2d 110 (1991) (explaining relevancy factors for evaluating admissibility of uncharged misconduct evidence to prove identity based on *modus operandi*); *State v. Johns*, 301 Or 535, 555-56, 725 P2d 312 (1986) (explaining relevancy factors for

---

[9] OEC 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[10] OEC 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided * * *. Evidence which is not relevant is not admissible."

evaluating uncharged misconduct evidence used to prove intent); *Bracken*, 174 Or App at 299-302 (analyzing and rejecting application of *Johns* factors to evidence offered to rebut a defendant's claim of self-defense).

Turning to the first requirement of the *Hampton* test, to be relevant, evidence must tend to make the existence of a fact of consequence to the outcome of an action more or less probable than it would be without that evidence. OEC 401. The threshold established by OEC 401 is "very low"—if evidence even slightly increases or decreases the probability of the existence of a fact of consequence, then it is relevant. *State v. Titus*, 328 Or 475, 480-81, 982 P2d 1133 (1999). Even if evidence can support an inference contradictory to that espoused by the proponent of the evidence, it is still relevant if it supports the proponent's inference. *Id.* at 481.

Here, despite defendant's efforts on appeal to paint her argument at trial as one involving issues only of language competency, defendant opened the door for admission of the state's uncharged misconduct evidence. Defendant argued to the jury that she was unfamiliar with American police practices because Japanese police officers act so differently from American police officers and that that unfamiliarity can explain her reaction when the officers handcuffed Nowak. Because defendant made that argument, evidence that she had prior contacts with American police officers during two prior arrests was relevant to the issues of whether her actions in this case could be attributed to unfamiliarity.

In addition to relevancy, the first requirement of the *Hampton* test also mandates that the evidence be used for a noncharacter purpose. Defendant argues that the state's intention in submitting the arrest evidence was to unfairly impugn defendant's character. However, as explained above, evidence of prior acts used to impeach defendant's testimony goes to the credibility of that testimony, not to whether defendant had a propensity to commit that particular crime. *See State v. Manrique*, 271 Or 201, 213, 531 P2d 239 (1975) (uncharged misconduct evidence admissible for purpose of impeaching credibility of defendant's testimony). Similarly, that same evidence may also be used for the noncharacter purpose of demonstrating defendant's knowledge at the time

the incident occurred. *See State v. Louis*, 296 Or 57, 62, 672 P2d 708 (1983) (uncharged misconduct evidence admissible to show defendant's knowledge at time crime was committed). Here, defendant argued that she was unfamiliar with American police practices. However, the prior arrest evidence supports the prosecutor's argument that defendant did know about American police practices from her own personal experiences with police here. Evidence impeaching defendant's credibility and demonstrating defendant's knowledge at the time of her actions constitutes a noncharacter purpose for prior arrest evidence. Because no additional relevancy factors are applicable to relevancy determinations in the contexts of impeachment and defendant's knowledge, the first requirement of the *Hampton* test is satisfied here.

The second requirement of the *Hampton* test is whether sufficient proof exists that the uncharged misconduct was actually committed and that defendant committed it. That requirement is not in dispute here because the conduct at issue here involved police arrests and defendant testified that she was the person arrested.

The final requirement of the *Hampton* test—balancing the probative value versus the unfair prejudicial effect of the evidence—need not be satisfied here. Defendant argues that OEC 404(3) mandates OEC 403 balancing for unfair prejudice in this instance. However because this is a criminal action, OEC 404(4) is applicable to our analysis.[11] Under OEC 404(4), evidence of uncharged misconduct is admissible so long as it is relevant and the state or federal constitutions do not require a balancing for unfair prejudice.[12] *State v.*

---

[11] The state did not expressly cite OEC 404(4) in its brief or at oral argument. However, that rule is explicit, unavoidably implicit, and clearly controls.

[12] OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200, 40.205, 40.210 and, to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160 [the OEC 403 exclusion of relevant evidence on grounds of prejudice, confusion or undue delay];

"(b) The rules of evidence relating to privilege and hearsay;

"(c) The Oregon Constitution; and

"(d) The United States Constitution."

*Wilhelm*, 168 Or App 489, 494 n 3, 3 P3d 715 (2000). Defendant does not argue on appeal that any of the constitutional limitations contained in OEC 404(4) are relevant here. Consequently, OEC 404(4) precludes balancing for unfair prejudice under OEC 403 in this instance. *State v. Leach*, 169 Or App 530, 537, 9 P3d 755 (2000).

Because the evidence of defendant's prior arrests was independently relevant for noncharacter purposes and there were sufficient indicia that defendant was the person who committed the uncharged misconduct, the trial court properly admitted the arrest evidence.

Affirmed.