Argued and submitted August 6, reversed and remanded December 8, 2004

# STATE OF OREGON,
*Appellant,*

*v.*

# DORAN BILLIE HARDMAN,
*Respondent.*

CR0102500; A119939

102 P3d 722

Laura S. Anderson, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Robert Thuemmel argued the cause for respondent. With him on the brief was Thuemmel & Uhle.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

## LINDER, J.

Defendant was charged with manslaughter in the first degree, ORS 163.118, arising out of an alcohol-related vehicle accident.[1] Before trial, defendant moved to exclude evidence of his involvement in a previous alcohol-related accident involving a motor vehicle. The trial court granted the motion, and the state appeals. We reverse and remand.

The relevant facts are undisputed. In April 2001, police responded to a car accident in the middle of the night. At the scene, they found defendant's company pickup truck, on fire and lying on its side, after it apparently had collided with a tree. Firefighters, who had already extricated defendant from the truck, reported to police that defendant had smelled of alcohol. Mike Mahar, who was also in the truck at the time of the accident, died either on impact or shortly thereafter.

Once at the hospital, defendant denied to police that he had been driving the truck and claimed, instead, that he was a passenger and was asleep at the time of the accident. Police took a blood sample from defendant approximately two-and-a-half hours after the accident that revealed that defendant had a blood alcohol level of 0.07.[2]

Defendant was charged with manslaughter in the first degree, which required the state to prove that defendant committed criminal homicide "recklessly under circumstances manifesting extreme indifference to the value of human life." ORS 163.118(1)(a). As part of its proof on that element, the state intended to offer evidence that defendant had been in a previous accident involving his use of alcohol. Defendant filed a pretrial motion to exclude that evidence. At the hearing on defendant's motion, the state developed a record on the nature of the evidence that it wanted to introduce.

---

[1] Defendant was also charged with the lesser included offense of manslaughter in the second degree, ORS 163.125, and driving while under the influence of intoxicants, ORS 813.010. Those charges are not at issue on appeal.

[2] Defendant also filed a motion to suppress the results of the blood test. That motion was denied and is not challenged on appeal.

Specifically, the evidence concerned an off-road dirt bike accident (the Tillamook accident) that had occurred on February 20, 2000, at Sand Lake Park. Sand Lake Park is a five-square-mile recreational area near Tillamook, Oregon, where people ride motorcycles, three-wheelers, four-wheelers, and other types of off-road vehicles. The park is open to the public. No formal rules regulate the off-road traffic. During peak hours, however, vehicle operators frequently abide by informal rules and agreements, usually nonverbal ones, in an effort to avoid collisions.

One such informal rule or agreement is that people who are racing their off-road vehicles will ride up the hill that forms the race-track, then fan out to the sides as they go down. By doing so, the riders are able to avoid colliding with those who are coming up on the opposite side of the hill.

The Tillamook accident occurred when Dennis Wright was racing against Ryan Snider, a friend of defendant. It was the middle of the night, and there were relatively few off-road vehicles in the area. Before Wright and Snider got to the top of the hill, but as they were approaching it, defendant suddenly appeared in their line of travel and collided head-on with Wright. By taking the route that he did, defendant's actions were contrary to the generally accepted "fan-out" method. Snider testified that, because there were so few people using the park at the time, defendant probably did not think it necessary to adhere to the unspoken rules.

After the accident, a police officer went directly to the hospital to determine if alcohol use had been involved. When that officer arrived at the hospital, defendant was covered in blood, strapped to a backboard, and appeared to be severely injured. The officer also noticed that defendant smelled strongly of alcohol. The officer therefore ordered a blood test to determine defendant's blood alcohol level. The test revealed that defendant, who was still underage at that time, had a blood alcohol level of 0.06. A blood test was also administered to Wright, who was also severely injured. Wright's blood alcohol test showed that he had not been drinking.

As a result of the Tillamook accident, the state charged defendant with the crimes of driving while under the

influence of intoxicants (DUII), assault in the third degree, and reckless endangering. Defendant was conditionally released pending resolution of the charges. As a condition of that release, defendant agreed, among other things, not to "consume or possess any intoxicating beverage" and not to drink and drive. That conditional release agreement was in effect at the time of the accident at issue in this case.

■     In moving to exclude evidence of the Tillamook accident and the conditional release agreement, defendant argued to the trial court that the evidence was inadmissible because it was not relevant and, even if relevant, it was unduly prejudicial. In particular, defendant characterized the challenged evidence as "propensity" evidence that did not meet the test of admissibility under *State v. Johns*, 301 Or 535, 725 P2d 312 (1986). Defendant distinguished the evidence in this case from the evidence in *State v. Johnstone*, 172 Or App 559, 19 P3d 966 (2001), arguing that *Johnstone* involved evidence that had a bearing on the defendant's knowledge, whereas the evidence in this case did not.

In response, the state argued that it was not offering the evidence of the Tillamook accident and the conditional release as propensity evidence, and, therefore, *Johns* did not apply. The state urged that, instead, it was offering the evidence "for the limited purpose" of proving that defendant had knowledge of the risks involved in drinking and driving at time of the accident in this case. The state relied on *Johnstone* as demonstrating that the evidence was relevant for that purpose, and the state invited the court to give the jury a limiting instruction to ensure that the jury would consider it for that purpose only.

The trial court initially took the matter under advisement and later issued a letter opinion granting the motion to exclude. In that letter opinion, the trial court explained that there "are not sufficient similarities between the Tillamook incident and the present case to allow the admissibility of evidence under [*Johns*] or [*Johnstone*]." In addition, the trial court concluded that, because of the dissimilarities between the two accidents, the prior accident did not provide "sufficient evidence of 'knowledge' of the dangers

of drinking and driving to outweigh the prejudicial effect of the evidence."

On appeal, the parties renew the arguments they made below, with one significant exception. Defendant no longer argues that the prior accident evidence, as the state intended to use it, was propensity evidence, and defendant tacitly withdraws his reliance on *Johns*.[3] For the most part, the parties focus their arguments on whether this case is controlled by *Johnstone* or whether *Johnstone* is distinguishable. We agree with the state that our analysis in *Johnstone* is on point.

*Johnstone* similarly involved a prosecution for first-degree manslaughter that arose out of an automobile accident in which the defendant was driving with a blood alcohol level between 0.21 and 0.23. To show that the defendant acted recklessly "under circumstances manifesting extreme indifference to the value of human life," ORS 163.118(1)(a), the state sought to introduce evidence of defendant's prior conviction for DUII.[4] The initial question that we had to resolve was whether the *Johns* test of relevancy applied to the evidence when offered to prove that element of manslaughter. We concluded that it does not:

> "[W]e do not use the *Johns* 'intent' analysis under these circumstances, because the state did not seek to admit [the prior DUII] evidence to show that defendant acted with the same intent during the [prior DUII] as he did during the * * * fatal collision [involved in this case]. Under *Johns*, a court looks for similarities between the prior bad acts and the present charged act; the question is whether the jury could infer that, because the defendant acted with a certain intent on one occasion, he or she acted with the same intent on another occasion. That analysis does not apply here

---

[3] Defendant urges, "Regardless of whether or not [*Johns*] applied, the trial court was correct." Defendant offers no argument that *Johns* should apply.

[4] Actually, the state sought to introduce evidence of two prior DUIIs, one of which occurred after the fatal accident that gave rise to the charges in *Johnstone*. The court in *Johnstone* held that the later-occurring DUII was not relevant to the defendant's subjective awareness of the risks of his conduct because it occurred after he engaged in that conduct. In this case, the state sought only to introduce evidence of an alcohol-related accident that occurred before the accident that gave rise to the current charges. We therefore do not discuss the portion of *Johnstone* that concerned the later-occurring DUII.

* * *. This evidence is more akin to 'knowledge' evidence under OEC 404(3). [The prior DUII], and the resulting diversion, makes up a part of the 'circumstances' that could be viewed as manifesting defendant's 'extreme indifference to the value of human life' when he drove under the influence of intoxicants [on the occasion that gave rise to the charges in this case]."

*Johnstone*, 172 Or App at 565-66 (footnote omitted).

We then examined the challenged prior DUII evidence in *Johnstone* to determine whether it in fact was relevant to " 'defendant's subjective awareness of the risks to which he expose[d] others.' " *Id.* at 566 (emphasis omitted) (quoting *State v. Hill*, 298 Or 270, 280, 692 P2d 100 (1984)). We concluded that it was. In that regard, we rejected the defendant's argument that the state had to produce testimony that the defendant had been specifically informed of or taught about the risks of drinking and driving in his diversion program. We reasoned that the diversion program imposed an obligation on the defendant to educate himself about those risks, a fact that a jury could consider, along with the fact of the previous DUII itself, as "relevant to whether [the defendant] had a subjective awareness of the risks to which he exposed others." *Id.* at 566-67.

The relevance determination we made in *Johnstone* was an examination for "logical" relevance, which establishes a "very low threshold" for the admission of evidence. *State v. Hampton*, 317 Or 251, 255 n 8, 855 P2d 621 (1993). In testing for logical relevance, a court asks only whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. "If the item of evidence affects the balance of probabilities to *any* degree, it is logically relevant." *Hampton*, 317 Or at 255 (emphasis added; citations omitted). Thus, the inference desired by the proponent must only be "reasonable"; it does not matter that the evidence also could support a contradictory inference. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Finally, the inquiry into logical relevance "can yield only one correct answer"; as a result, evidence is either logically relevant or it is not, and "a trial court has no discretion to label it as irrelevant." *Id.*

The evidence that the state sought to introduce in this case clears that low threshold. The state wanted to show that, at the time of the fatal accident that gave rise to the charge of first-degree manslaughter, the circumstances included the following:

- Defendant had been involved in the Tillamook accident;

- Defendant had been drinking at the time of the Tillamook accident;

- The Tillamook accident seriously injured defendant and the other driver and required them to be hospitalized;

- Charges of DUII and other crimes were pending against defendant as a result of his involvement in the Tillamook accident;

- As a condition of his release on those charges, defendant had agreed not to "consume or possess any intoxicating beverage" and not to drink and drive;

- The conditional release agreement was still in effect.

Those facts provide at least some basis—and potentially a very compelling basis—from which to infer that defendant was subjectively aware of the risks of drinking and driving. The circumstances of the Tillamook accident and the injuries it caused, without more, increase the probability that defendant had a heightened awareness that alcohol and driving do not mix. When coupled with the conditional release agreement, by which defendant had expressly agreed not to drink and drive, the inference is even stronger. To be sure, perhaps a contradictory inference could be drawn. That possibility does not matter, however, as long as one reasonable inference to be drawn from it is the inference desired by the state. *Titus*, 328 Or at 481. Because, as we have concluded, the evidence logically supports an inference that defendant had a heightened subjective awareness of the risks that his conduct involved, the evidence is relevant under OEC 401.

In attempting to distinguish *Johnstone* from this case, defendant argues that the analysis in *Johnstone* depended on the fact that the defendant had been ordered to participate in a DUII diversion program that included specific education about the risks of drinking and driving. Defendant thus asserts, "Being told not to drink, on the one hand,

and going through education as to why not to drink and drive, on the other, are two different things."

Defendant's argument has two flaws. First, our decision in *Johnstone* did not depend on evidence that the defendant in that case had been formally "educated" about the risks of drinking and driving. To the contrary, the defendant in *Johnstone* unsuccessfully argued that the state should be required to show that he in fact had been specifically informed about the dangers of drinking and driving in the course of his diversion program. In rejecting that argument, we reasoned that the defendant's awareness of his "obligation" to participate in a diversion program was itself a basis for inferring his subjective awareness of the risks to which drinking and driving exposed others. We viewed the defendant's prior DUII conviction as a basis for inferring such an awareness as well. *Johnstone*, 172 Or App at 567-68. In short, rather than embrace a requirement that the evidence must show that a defendant had been formally informed or actively educated about the dangers of drinking and driving, we rejected such a requirement in *Johnstone*. In effect, we recognized that people, as a matter of their common sense, can gain a heightened awareness of those risks from the fact of a DUII conviction and the fact that they are obligated to participate in a diversion program, without more.

Similarly, here, defendant had been charged with DUII as a result of the alcohol-related Tillamook accident. Both the fact of the accident itself and the charge are a basis on which a reasonable person might have a greater subjective awareness that drinking and driving is risky behavior. In addition, defendant had a special, legal "obligation" not to drink and drive as a result of his conditional release agreement. As in *Johnstone,* those two facts, alone or in combination, permit a logical inference that defendant acted with a heightened awareness of the dangers of drinking and driving.

The second flaw in defendant's argument is that, in all events, his point goes to the weight of the evidence, not its threshold relevancy. The lack of evidence that defendant was formally educated or informed about the risks of drinking and driving may make the inference that he was subjectively

aware of those risks weaker than if he had had that information. As a result, a factfinder may not find the challenged evidence as persuasive as other evidence might be. But that recognition does not render the evidence inadmissible; it means only that the state runs the risk, depending on what other evidence it relies on in its case-in-chief, that it will not carry its burden of persuasion to the factfinder's satisfaction. In other words, defendant's criticism of the evidence may be fair in terms of the persuasive force of the inference to be drawn, but it is a criticism more suited to closing argument before the factfinder. It is not a criticism that defeats the logic of drawing the inference and, as a result, it does not defeat the admissibility of the evidence on logical relevancy grounds.

■        Defendant next argues that, even if the challenged evidence is relevant for purposes of OEC 401, it nevertheless is inadmissible under OEC 404(3), which establishes additional requirements for the evidentiary use of so-called "bad acts" or uncharged misconduct evidence.[5] The Oregon Supreme Court has articulated a three-part test of admissibility under OEC 404(3). First, the evidence must be " 'independently relevant for a noncharacter purpose.' " *Hampton*, 317 Or at 254 (quoting *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992)). Second, " 'the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that [the] defendant committed it.' " *Id*. Finally, " 'the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or consideration set forth in OEC 403.' " *Id*.

Our analysis of the logical relevancy of the challenged evidence satisfies the first prong of the test under OEC 404(3). *See State v. Grey*, 175 Or App 235, 249, 28 P3d 1195 (2001), *rev den*, 333 Or 463 (2002) (first prong of OEC 404(3) test requires that evidence be logically relevant under OEC 401 for a noncharacter purpose). As we have already

---

[5] OEC 404(3) deals with the admissibility of character evidence and states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." One exception to that general proposition, however, is that such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*.

concluded, the Tillamook accident and the conditional release agreement permit an inference that defendant, at the time of the conduct in question in this case, had a heightened subjective awareness of the risks of drinking and driving. That inference, in turn, bears on whether defendant acted recklessly, under circumstances manifesting an extreme indifference to the value of human life. The evidence therefore was offered for a noncharacter purpose, and it logically made the fact to be proved more probable.

Defendant concedes that the second prong of the test—that the past acts occurred and that defendant committed them—is satisfied. That is, he concedes the Tillamook accident occurred, that he was involved in it, and that he was subject to the conditional release as a result.[6]

■ That leaves only the third prong of the *Hampton* test—balancing the probative value versus the danger of unfair prejudicial effect of the evidence pursuant to OEC 403. *See Hampton*, 317 Or at 254. OEC 403 provides that evidence, even when relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." Although the trial court summarily engaged in that balancing inquiry, it did so with an erroneous

---

[6] Defendant takes issue with whether evidence of the Tillamook accident is subject to the three-part test under OEC 404(3), asserting that his alcohol-related accident was not really "misconduct" because riding off-road vehicles under the influence of alcohol is probably done by "hundreds of recreational enthusiasts weekly." The argument does not aid defendant. A conclusion that OEC 404(3) does not apply would not render the challenged evidence inadmissible. Such a conclusion would mean, instead, that the only test of admissibility is logical relevancy under OEC 401. We have resolved the issue of logical relevancy contrary to defendant's position. Thus, if we were to agree with defendant that the Tillamook accident evidence is not subject to OEC 404(3), the challenged evidence would be admissible without further analysis.

In all events, OEC 404(3) is not limited to crimes or bad acts, but extends instead to any evidence of prior "acts" that could be used to establish character. OEC 404(3). Moreover, even if the rule were limited to misconduct or bad acts, the Tillamook accident qualifies. At a minimum, defendant, who was a minor at the time, violated state law by possessing and consuming alcohol. *See* ORS 471.430. In addition, as a result of his conduct, defendant was charged with multiple crimes. Finally, the possibility that "hundreds of recreational enthusiasts weekly" combine drinking and operation of off-road vehicles does not mean that the conduct is not misconduct or not otherwise inappropriate.

predicate in place. That is, after erroneously applying *Johns*, the trial court concluded that the prior accident was irrelevant. The trial court's balancing inquiry under OEC 403, therefore, was fatally skewed in favor of a conclusion of non-admissibility because the probative side of the scale had nothing on it. The analysis instead must be made with the recognition that the evidence of the Tillamook accident and the conditional release are logically relevant to—and necessarily probative of—defendant's subjective awareness of the risks to which his conduct (drinking and driving) exposed others. Only then can the prejudicial effect of the evidence be accurately weighed against that probative value. It is for the trial court, in the first instance, to make that determination.[7]

Reversed and remanded.

---

[7] The trial court's decision under OEC 403 is accorded deference provided that the court makes adequate findings "on the record to back up this discretionary call." *State v. Mayfield*, 302 Or 631, 647, 733 P2d 438 (1987). Although we remand because the trial court must engage in that discretionary exercise in the first instance, we note that, under OEC 404(4), evidence of uncharged misconduct is admissible in a criminal case if it is relevant, as long as neither the state nor federal constitutions require balancing for unfair prejudice. Arguably, the third "balancing" prong of the *Hampton* test does not apply in this case. *See Grey*, 175 Or App at 250-51 (OEC 404(4) precludes balancing for unfair prejudice under OEC 403 if defendant does not argue that the constitutional limitations contained in OEC 404(4) apply). But because our disposition requires a remand, we leave it to the parties and the trial court to determine and engage in the appropriate analysis on remand.