STATE OF OREGON,
*Respondent on review,*

*v.*

EDWARD EUGENE ALLEN,
*Petitioner on review.*

(CC CR 84 2 32; CA A36265; SC S32762)

725 P2d 331

Robert J. McCrea, of McCrea, P.C., Eugene, argued the cause and filed the petition for petitioner on review.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent on review. With him were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

JONES, J.

## JONES, J.

Defendant was convicted by a jury of first degree arson. He appealed, contending that the trial court erred in admitting evidence that he previously had committed arson. The Court of Appeals affirmed defendant's conviction without opinion, and defendant petitions this court for review. We granted review to decide whether the Court of Appeals properly affirmed the trial court's admission into evidence of a prior arson of a building committed by the defendant. We affirm the Court of Appeals.

## FACTS

Defendant was charged with hiring an acquaintance, Michael Dotson, to set fire to a house in Brookings on December 1, 1982. At trial, the state offered evidence that Dotson met defendant through Dotson's janitorial service, which cleaned a restaurant owned by defendant, and that Dotson and defendant met several times in Medford taverns at which time defendant told Dotson that he wanted to have a house in Brookings burned. Defendant said that the house belonged to a friend who was getting a divorce, and the friend wanted to burn the house before the property settlement. Dotson eventually agreed to set the fire in return for several thousand dollars.

After detailed coaching by defendant, Dotson drove from Medford to Brookings during the early morning of December 1. Arriving in Brookings at 8 a.m., he purchased a gasoline can at a hardware store and filled it with unleaded gasoline. Following defendant's prescribed methodology, Dotson placed paper cups filled with unleaded gasoline in the oven and turned on the oven; he also poured gasoline in several rooms in the house. After the house caught fire, Dotson remained nearby and watched firefighters put out the blaze. He then telephoned defendant to report that he successfully had set fire to the house. Defendant denied any participation in setting the fire. To show defendant's motive, the state offered evidence that defendant hired the dwelling torched to obtain insurance money in excess of the market value of the premises and to resolve a friend's marital dispute.

Although defendant did not own the house, the state argued that he would gain from the fire. To understand the

state's theory of defendant's motive, we give the somewhat complex history of the house's legal ownership. Defendant's mother originally owned the house, using it occasionally on weekends and vacations. In 1981, she and defendant borrowed $50,000 from a credit union using the house as security; defendant spent about $40,000 of the loan on investments. Defendant defaulted on the loan and the credit union took title to the house in July 1982. While defendant and the credit union attempted to negotiate an agreement so that defendant could repurchase the house after foreclosure, the insurance policy for the house remained in his mother's name, and was in her name at the time of the fire.

In addition to evidence offered to prove that the 1982 fire was an act of arson, the state offered evidence of a 1975 arson to which defendant confessed. Defendant's confession to the arson was one of a number of other confessions to other crimes and he pled guilty to two burglaries and one perjury charge. It is the admission of this evidence of defendant's uncharged prior misconduct that concerns us in this case.

To prove defendant's prior arson, the state offered testimony from two state police officers. The officers testified that in 1977 defendant confessed that he hired a friend to set fire to his house in Talent, Oregon, on January 27, 1975. Defendant admitted that because he needed money he filed a falsified insurance claim for items not actually lost in the fire and that he committed the arson to resolve a marital dispute.

At trial, the state contended that the evidence of the 1975 arson showed a method similar to the 1982 arson: defendant paid a friend to set the fire, gasoline was used to start the fire, and he falsely claimed insurance proceeds. The state also argued that defendant had learned from the 1975 arson to refine his criminal technique. The force of the gasoline explosion in the 1975 fire knocked defendant's accomplice off the front porch of the house. "[T]he contrast between the crude method of setting the 1975 fire, in which defendant's friend was injured, and the somewhat more sophisticated and safe method of starting this fire, in which the ignition would be delayed until the oven element reached a high temperature, showed defendant's preparation and plan to commit the crime."

Defendant objected to the admission of evidence

concerning the 1975 arson, contending that it was not relevant to the 1982 arson with which he was charged and, if relevant, defense counsel claimed that the prior arson evidence was "unfairly prejudicial and highly inflammatory." (No pun intended.) The trial judge admitted the evidence, stating that it

> "* * * tends to identify Mr. Allen. It tends to show the motive. It tends to show the intent. It tends to show preparation. It tends to show plan. It tends to show knowledge, absence of mistake or accident. And it is evidence that the jury can consider [in the case-in-chief]."

As mentioned, we allowed review, together with *State v. Johns,* 301 Or 535, 725 P2d 312 (1986), and *State v. Gailey,* 301 Or 563, 725 P2d 328 (1986), to determine whether the similar crime evidence in this case is admissible under OEC 404(3). Defendant denied having anything to do with the fire and claims that the fire's origin was unknown.

■     The prior crime evidence of the 1975 arson was admissible. As we stated in *Johns* and *Gailey,* we approach prior crime cases by first determining if the prior crime evidence even slightly increases or decreases the probability of existence of any material fact in issue, and that if the *only* relevance the prior crime evidence possesses is to prove the defendant had a propensity to commit the charged crime, the evidence must be excluded. Although the prosecutor in the case at bar asserted admissibility on several grounds, we select two of those grounds which are most worthy.

As set forth in the massive work, Imwinkelried, Uncharged Misconduct Evidence (1984), there are certain basic methods of circumventing the prohibition against using a defendant's acts as circumstantial proof of conduct. The first method is to avoid the forbidden theory of logical relevance, that is, to prove propensity or bad character, by offering the defendant's acts to establish an immediate inference other than the defendant's subjective disposition, such as offering the defendant's acts to prove an objective improbability of accident. Imwinkelried sets forth the following example demonstrating this method:

> "* * * Suppose that the government is prosecuting the defendant for arson at her warehouse. The prosecution has evidence that in the past four years, the defendant started

three other arson fires at other buildings she owns in town. If the defendant claimed that the warehouse fire started accidentally, the prosecutor could introduce the evidence of the other arson fires to negate the claim of accident. [Jefferson, California Evidence Benchbook § 21.3; 2 Wigmore, Evidence §§ 303, 354, 363 (3rd Ed); Albro, Proof of Similar Offences to Establish a Prima Facie Case, Lincoln L Rev 72 (July 1930); Slough & Knightly, Other Vices, Other Crimes, 41 Iowa L Rev 325, 330 (1956); Recent Case, 87 Harv L Rev 1074, 1075 (1974).]

"The theory of logical relevance is that under the doctrine of chances, the large number of fires reduces the objective likelihood that the fire in question was accidental. The theory of logical relevance rests on an objective or statistical improbability rather than a subjective probability based on the defendant's character. This theory of logical relevance does not force the jury to focus on defendant's subjective character. * * * [E]ven anonymous fires at the defendant's other building might be admissible to increase the objective probability of an incendiary fire. * * *" Imwinkelried, *supra* at 52-53, § 2:20 (footnote material in brackets; other footnotes omitted).

Imwinkelried asserts that by utilizing this approach, "the prosecutor greatly reduces the risk of prejudice to the defendant" because the "alternative theory of logical relevances does not force the jury to dwell on the defendant's character as a criminal or arsonist." He writes:

"* * * The jury does not ask: What type of person is the defendant? Rather, the jury asks: Given these other fires, how likely is it that the fire in question was accidental? * * *" *Id.* at 53, § 2:20.

He concludes that although the ultimate inference in the alternative theory of logical relevance may relate to the defendant's conduct (that is, whether the defendant started an arson fire at her warehouse), the "prior crime" rule as set forth in OEC 404(3)'s parallel, FRE 404(b), does not bar the theory so long as the intermediate inference is not the defendant's subjective character. In other words, the prosecutor is not using the evidence of the defendant's prior crime "to prove the character of a person." *Id.* at § 2:20. The jury does not focus on whether the defendant is a criminal or has a propensity to commit crimes, but on whether it is unlikely that if he started the fire at the home he did so accidentally.

As we set forth in *Johns,* these cases become more difficult when there is only one prior relevant act, but this lack of multiplicity does not foreclose admissibility. We look to the complexity of the prior act. Indeed, in this case the complexity of the prior act and the present crime is obvious. The hiring of a willing accomplice to set a dwelling or building on fire so that defendant could fraudulently collect insurance proceeds is no simple, impulsive criminal act. Such a crime includes, among other things, premeditation, planning, concealment and knowledge.

In the 1975 arson, the defendant first had to set up the insurance on the house and contents to make it economically advantageous to have destroyed by arson. He did the same thing for the 1982 arson, manipulating the insurance benefits to him by involving his mother in the transaction. He had to find an accomplice who was willing to undergo the risk of setting the fire for a fee and to face the possible consequences of criminal prosecution if apprehended. He hired an accomplice in both cases. He set up an alibi in both cases, claiming that he was at the theater in 1975 and at his office in 1982, although he could not remember if he was at his office in Phoenix or Medford. In the 1975 arson, gasoline was used but the accomplice almost blew himself up in the process by attempting to ignite the gasoline with a match. The state makes a plausible argument that defendant gained knowledge from that first experience so that for the 1982 arson defendant carefully instructed the accomplice to not light the gasoline, but to set it in the oven in paper cups so as the oven became hotter the gasoline would explode without endangering the accomplice.

From the above, we conclude that the prior arson evidence possessed logical relevance independent of proof of defendant's character and was admissible if the probative value of the evidence was not outweighed by its prejudicial effect on the jury. The fact that the prior misconduct did not result in a conviction for arson does not render OEC 404(3) inapplicable. The rule covers prior acts, criminal or not, and a statement or confession of a prior crime, act or wrong is admissible even though no prior conviction has been effected.

In *State v. Seydell,* 252 Or 160, 446 P2d 678 (1968), this court confronted a similar relevance issue concerning

prior misconduct. Defendant was convicted of obtaining money by falsely reporting a burglary of his house and by filing a fraudulent insurance claim. The trial court admitted evidence that defendant previously had burned a building for insurance money. Justice O'Connell, writing for the court, stated:

"* * * Defendant's conversation with the witness concerning the burning of the house in Portland indicated that defendant's purpose in doing so was to obtain money unlawfully from his insurance company. * * * The evidence of his purpose on the previous occasions to unlawfully obtain insurance money is strongly probative of defendant's purpose to unlawfully obtain insurance money by staging a fake burglary. This evidence was not, as defendant contends, relevant only to show that he was a bad man; it was relevant to show that defendant had an unlawful purpose in mind when he filed the proof of loss after the alleged burglary. As McCormick on Evidence, § 157, p. 327 (1954) points out, 'There are numerous other purposes for which evidence of other criminal acts may be offered, and when so offered the rule of exclusion [i.e., the rule excluding evidence of other crimes to show bad character] is simply inapplicable.' One of the purposes for which such evidence is admissible is '[t]o show, by similar acts or incidents, that the act on trial was not inadvertent, accidental, unintentional or without guilty knowledge.' *Id.* at p. 329. This describes the purpose for which the evidence was relevant in the present case." 252 Or at 163 (brackets in original; footnote omitted).

The trial court reserved ruling on a motion in limine to exclude the prior crime evidence. Later in the trial defendant again objected to the prior arson evidence and the court made the following comments and ruling:

"* * * First I was going to call attention that * * * Rule 404(3) * * * gives examples. And then in the commentary it says a list of purposes set forth in subsection (3) is not meant to be exclusive.

"* * * [W]e are not limited by any one particular item as stated. The actual test * * * [doesn't] necessarily mean that evidence is per se admissible or per se not admissible * * * [b]ecause * * * this is a question that's discretionary with the trial court * * *.

"* * * [T]here is a first question, whether it's relevant, and when you are looking at the probative value versus inflammatory nature there is the need for the evidence. The —

certainty that the crime was committed and that the defendant was the actor, strength or weakness of the evidence, and then inflammatory effect upon the jury. And there again, you have to look at balance, the probative value against whether it's inflammatory.

"Now this * * * is not a sex crime that's attempted to be brought in, which are highly inflammatory. I don't think that a fact that a person hiring a friend to burn property is the type that's unduly going to inflame a jury. It's not such a shocking act that the jury would be unduly inflamed. And I find that it * * * is relevant evidence. It has probative value, outweighs prejudicial or inflammatory nature. The evidence is needed from the evidence presented here, there is a certainty that previous crime was committed and that the defendant was the actor, strong evidence. * * * [H]ere the fact that the person was in debt, removed certain property, procured either through hiring or other means a friend to burn the property, insuring himself an alibi at the time the property was burned, removal of certain items before the fire, and insurance claim for certain items that were not there, there is enough similarity, I feel, that, that it's enough uniqueness that it would be admissible.

"Now, as far as the time, I think that varies too with a different type of crime. * * * [B]urning a house for an insurance claim is something that you, by its very nature, you don't do too often. And therefore I think that's certainly within this period of time. This is not removed by that. So the offer of proof will be allowed."

Among other reasons the court admitted the evidence to show knowledge, absence of mistake or accident.

We will not summarize all the circumstantial evidence of guilt that the state produced in addition to the declarations of the co-conspirator, except to note that the evidence was substantial and the co-conspirator's declarations amply corroborated. Defendant testified and was impeached with the prior crimes of burglary and perjury. Although only relevant to credibility, such impeachment evidence probably damaged defendant's character irreparably. The evidence of the prior arson was relevant to defendant's knowledge of how to start an arson fire and was also relevant to negate evidence that the fire was accidental or originated from an unknown source. The trial judge very astutely evaluated the pros and cons of admitting the evidence before

exercising his discretion to do so. His observations and findings justified his decision. We cannot say as a matter of law that the trial judge abused his discretion in admitting this evidence.

The Court of Appeals is affirmed.