Argued and submitted September 30, reversed and remanded November 13, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# JEFFERY SCOTT CARREIRO,
*Appellant.*

F03896; A109520

57 P3d 910

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Kistler, Judge.

EDMONDS, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

**EDMONDS, P. J.**

Defendant appeals from convictions for possession and delivery of marijuana, ORS 475.992(2)(a), (4)(a). He argues that the trial court erred in admitting evidence of other crimes because those acts were not legally relevant and were impermissibly used to demonstrate his propensity to commit drug crimes. We conclude that the trial court erred in admitting the evidence and that the error was not harmless. Accordingly, we reverse and remand.

In light of the jury's verdicts, we review the facts in the light most favorable to the state. *State v. Grey,* 175 Or App 235, 237, 28 P3d 1195 (2001), *rev den,* 333 Or 463 (2002). In December 1998, police conducted a search of the residence in which defendant was staying. During the search, approximately 115 grams of marijuana was discovered in an unlocked safe under the bed in which defendant had been sleeping with his girlfriend. The police also found several sets of scales, large amounts of cash, baggies, a heat sealing device, and a police scanner in the residence. Defendant, along with his girlfriend, was arrested and charged, as relevant here, with possession of a controlled substance and delivery of a controlled substance for consideration.

Defendant pled not guilty and, at trial, asserted that he was merely spending the night with his girlfriend and was unaware that there was marijuana in the house. His girlfriend testified that after defendant had gone to sleep the night before she had received the drugs and placed them in the safe. To counter defendant's claim that he was unaware that the marijuana was in the residence, the state offered evidence that in November 1999 the police, while executing a search warrant, discovered defendant and the resident of another house hiding in an adjacent barn. They found an ounce of methamphetamine approximately two feet away from defendant. He also had a set of scales and $400 in cash on his person. The state argued that the evidence of defendant's subsequent criminal conduct was relevant to whether defendant knew that the marijuana was present in his girlfriend's residence in December 1998. The prosecutor explained to the trial court:

"I * * * think it's relevant because people who are in the business of selling illegal drug, it doesn't matter what the [sic] drug they sell, marijuana or methamphetamines. If they're in the same general market out there then I think it's relevant. * * * And so it is very important for the jury to - to learn this, otherwise they're going to basically get the wool pulled over their eyes."

The trial court agreed with the state and allowed the evidence of defendant's November 1999 acts to be presented to the jury.

■        On appeal, defendant argues that the evidence of his subsequent conduct had no relevance to whether he was aware that there was marijuana in his girlfriend's residence in December 1998. The state counters that the evidence was offered for a permissible noncharacter purpose, that is, to refute his claim that he was ignorant of the presence of the marijuana. We review the trial court's ruling regarding the relevance of the evidence for legal error. *State v. Bracken*, 174 Or App 294, 296, 23 P3d 417, *rev den*, 333 Or 162 (2001).

■        OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

This court has stated that, "[u]nder some limited circumstances, an act that occurs later in time than the crime for which a defendant is being prosecuted may be relevant and admissible," for the purposes allowed under OEC 404(3). *State v. Johnstone*, 172 Or App 559, 567, 19 P3d 966 (2001). For such evidence to be admissible,

" '(1) [it] must be independently relevant for a noncharacter purpose * * *; (2) the proponent of the evidence must offer sufficient proof that the * * * misconduct was committed and that defendant committed it; and (3) the probative value of the * * * misconduct evidence must not be substantially outweighed by the dangers set forth in OEC 403.' "[1]

---

[1] OEC 401 provides:

*State v. Hampton*, 317 Or 251, 254, 855 P2d 621 (1993) (quoting *State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992)). Because we conclude that the evidence of defendant's subsequent methamphetamine possession was not relevant for any noncharacter purpose, we do not address the other elements of the test.

■ The state's argument that the evidence is relevant necessarily relies on the assumption that, because it could be inferred that defendant was dealing drugs in November 1999, he must have been aware of the drugs in the apartment in 1998. Generally, evidence of other wrongful acts offered to prove an element of a particular crime is precisely the kind of propensity evidence that OEC 403(3) is intended to exclude. *See Johnstone*, 172 Or App at 569 (excluding bad act evidence that the court determined furthered only a showing that "once a drunk driver always a drunk driver"); *State v. Gibson*, 144 Or App 523, 531-32, 928 P2d 344 (1996), *rev den*, 325 Or 80 (1997) (concluding that prior bad act evidence that tended only to prove that "once a child abuser always a child abuser" was not relevant for any noncharacter purpose).

Nonetheless, the state argues that the November 1999 evidence is relevant as an exception to the general rule under the "doctrine of chances" rule described by the Supreme Court in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986). In that case, the court explained that,

" 'the more often the defendant performs the actus reus, the smaller the likelihood that the defendant acted with an innocent state of mind. The recurrence or repetition of the act increases the likelihood of a mens rea or mind at fault. In isolation, it might be plausible that the defendant acted accidentally or innocently; a single act could easily be explained on that basis. However, in the context of other misdeeds, the defendant's act takes on an entirely different

---

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or considerations of undue delay or needless presentation of cumulative evidence."

light. The fortuitous coincidence becomes too abnormal, bizarre, implausible, unusual or objectively improbable to be believed. The coincidence becomes telling evidence of mens rea.' "

*Johns*, 301 Or at 552-53 (quoting Edward Imwinkelried, *Uncharged Misconduct Evidence* 8, § 5:05 (1984)). The premise on which the "doctrine of chances" is based is that "similar results do not normally occur through abnormal causes." *Id.* at 553. For instance, the doctrine may be applicable to show intent when a defendant performs a particular act. *See id.* at 556-57 (evidence admissible under the doctrine when defendant claimed he had accidentally shot and killed his wife where he had earlier attempted to kill his wife under nearly identical circumstances); *see also State v. Wieland*, 131 Or App 582, 587-89, 887 P2d 368 (1994) (doctrine allowed admission of evidence of prior fires to show the absence of an accident in an arson case).

■    Here, defendant does not claim that he acted accidentally. Rather, he contends that he did not knowingly possess the contraband and that, in fact, he was unaware of the presence of the contraband in the house. As noted above, generally the "doctrine of chances" is not available to prove that a defendant *acted* in a particular manner but, rather, to impute to him a particular *mental state* once the requisite conduct has been proved. Here, the state sought to use the later incident to prove both the elements of possession and scienter. Further, the indictment in this case alleges that defendant acted "knowingly" when he committed the offenses of delivery and possession of a controlled substance in December 1998. The word "knowingly" means that he is alleged to have acted "with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8). Although OEC 404(3) provides that evidence of other crimes may be admissible to prove "knowledge," the evidence of defendant's conduct in November 1999 is not so substantially similar to the circumstances in December 1998 so as to give rise to a reasonable inference that defendant was aware of the drugs in the safe under his girlfirend's bed. The December 1998 and November 1999 incidents involved different people, different physical locales, and different substances. Although the state argues

that there are similarities (both marijuana and methamphetamines are controlled substances, both quantities of drugs seized were larger than necessary for personal use and in both instances, consistent with drug dealing, and defendant was found in possession of large amounts of cash and digital scales), "[t]he dissimilarities must be as fully considered as the similarities[.]" *State v. Pratt*, 309 Or 205, 214, 785 P2d 350 (1990).

■ In sum, the "doctrine of chances" is applicable when the logical relevance of the evidence sought to be admitted rests on an *objective improbability* because the similarities of the two acts outweigh the dissimilarities, in contrast to a subjective probability based on the defendant's character. *State v. Allen*, 301 Or 569, 574, 725 P2d 331 (1986). That test is not met here. It cannot be said that it is objectively improbable that defendant was unaware of the drugs in the safe under his girlfriend's bed merely because he was selling drugs under different circumstances 11 months later. We conclude that the evidence was not relevant for the purpose advanced by the state and that the trial court erred in admitting it.

■ The state next argues that, if the trial court erred in admitting evidence of defendant's November 1999 conduct, that error was harmless. Evidentiary error is not presumed to be prejudicial; where there is little likelihood that the error affected the outcome of the trial, affirmance is required. Or Const, Art VII (Amended), § 3; *Johnstone*, 172 Or App at 569. In making that determination, we review all the evidence. *State v. Walker*, 140 Or App 96, 99, 914 P2d 8 (1996).

■ At trial, the state did not present direct evidence regarding defendant's knowledge of the presence of marijuana in the house, and defendant's girlfriend testified that he was unaware that the marijuana was present. Defendant also presented evidence that he had been staying, for the most part, in a residence other than the one belonging to his girlfriend. Further, a significant amount of the evidence presented by the state related to defendant's November 1999 conduct, as did a large portion of the state's arguments to the jury. For all of the above reasons, we cannot affirmatively say that the evidence was unlikely to have affected the result of

the trial. We conclude that the trial court's erroneous admission of the subsequent bad act evidence was prejudicial and requires reversal.

Reversed and remanded.