Argued and submitted September 30, 2003, conviction for criminal trespass in second degree reversed; conviction for possession of a controlled substance reversed and remanded for new trial January 28, 2004

### STATE OF OREGON,
*Respondent,*

*v.*

### BARRON CEDRIC WILLIAMS,
*Appellant.*

### C 00-10-38364; A113979

83 P3d 927

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Patrick G. Ward, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Leeson, Judge pro tempore.

LEESON, J. pro tempore.

**LEESON, J., pro tempore**

Defendant appeals his convictions for possession of a controlled substance, ORS 475.992(4)(a), and criminal trespass in the second degree, ORS 164.245. He argues that the trial court erred in admitting evidence of previous unrelated incidents in which he allegedly tried to dispose of materials related to crack cocaine use and in convicting him of second-degree trespass. For the reasons that follow, we reverse the convictions and remand for a new trial limited to the charge of possession of a controlled substance.

We state the facts most favorably to the state because of the jury's verdict in its favor. *State v. Carreiro*, 185 Or App 19, 21, 57 P3d 910 (2002). At about 9:20 p.m. on the evening of October 23, 2000, two police officers saw defendant standing at a MAX light rail platform on First Street underneath the Burnside Bridge in Portland, a location that is within a drug-free zone. The officers recognized defendant from previous contacts, and they knew that he was excluded from the zone. They drove past defendant and then made a U-turn in order to approach him. The officer who was not driving watched defendant the entire time that they were doing so. The officer saw defendant walk toward a stairway that leads to the top of the bridge and bend over. The officer could not see what defendant did while bending. Defendant then turned around and walked toward the patrol car. He produced a written "variance" that permitted him to be in the drug-free zone for certain purposes.[1]

While defendant showed the variance to the officer who had not been driving, the other officer went to the stairway where defendant had bent over. On the first step, he found a metal tube that appeared to be a pipe used to smoke crack cocaine. The tube had residue inside that appeared to be burnt cocaine. There was also a piece of a metal scouring pad inside the tube. The officer then arrested defendant for possession of a controlled substance and searched him. He found a six-inch metal rod and another piece of a metal scouring pad. One of the officers testified that the rod could be used

---

[1] Because neither the state nor defendant introduced the variance into evidence, we do not know its contents.

to clean a crack pipe and that the metal scouring pad could be used as a filter. The evidence subsequently tested positive for cocaine.

Defendant filed a motion *in limine* to exclude any evidence of prior instances in which defendant had attempted to get rid of drug paraphernalia when contacted by the police. The trial court denied the motion on the ground that the evidence was admissible to show *modus operandi*. At trial, the officers testified that they often find drug debris discarded in the Old Town area but that it is not common to find crack pipes because such pipes have value among drug users. Over defendant's objection, one of the officers also testified about two previous encounters he had had with defendant in which defendant had attempted to dispose of paraphernalia related to crack cocaine. On one occasion, the officer and a partner saw defendant in a fast food restaurant and arrested him on an outstanding warrant. The officer's partner found a bag of imitation crack cocaine in a garbage can next to where defendant was standing. Their search of defendant yielded crack paraphernalia and some crack residue. On the other occasion, defendant dropped a metal pipe from his hand while an officer was talking with him. The pipe subsequently tested positive for cocaine.

Defendant's first and second assignments of error concern the trial court's denial of his motion *in limine* and its overruling of his objection to the introduction of evidence of the two encounters described above. Defendant argues that the evidence was not relevant in general and, in particular, was not proper evidence of *modus operandi*. On appeal, the state concedes that the evidence is not relevant as proof of *modus operandi*, in part because defendant's identity was not in issue and in part because the previous crimes are not sufficiently distinctive. Nonetheless, the state argues, the evidence was relevant to show that defendant owned the crack pipe that the police found on the stairway. The state relies on *State v. Allen*, 301 Or 569, 725 P2d 331 (1986), to support its argument that the trial court did not err in admitting the evidence regarding defendant's prior encounters with police.

In *Allen*, the defendant was convicted of first-degree arson for hiring an accomplice to set fire to a house. At the

defendant's instruction, the accomplice placed paper cups filled with gasoline in an oven in the house, poured gasoline in other rooms, and then turned on the oven. The defendant thereafter filed an insurance claim for fire damage. The defendant claimed that he had nothing to do with the fire and did not know how it had started. At trial, and over the defendant's objection, the trial court admitted evidence that the state offered involving a previous arson to which the defendant had confessed. In the earlier case, the defendant had also hired an accomplice to set the fire, the accomplice had also used gasoline, and the defendant had also attempted to collect insurance proceeds.

The Supreme Court in *Allen* explained that the evidence of a prior crime is relevant if it "even slightly increases or decreases the probability of [the] existence of any material fact in issue[.]" *Allen*, 301 Or at 573. However, under OEC 404(3), if the only relevance of the evidence is to prove the defendant's propensity to commit the crime charged, then it is not admissible. *Id.* In other words, the immediate inference that the evidence suggests must lead the jury to focus on the evidence for a noncharacter purpose. In *Allen*, the noncharacter purpose for which the prior arson was admissible was to help establish that the house fire was not accidental: The previous intentional fire made it less likely that the fire in question was accidental. *Id.* at 573-74.[2]

*Allen* does not assist the state in this case. That police had found a bag of imitation crack cocaine in a garbage can near defendant on a previous occasion did not make it more likely that defendant owned the crack pipe that the

_____

[2] The *Allen* court noted that the question of the admissibility of prior bad acts can be more difficult when there is only one prior relevant act but that the "complexity" of the prior bad act can establish logical relevance independent of proof of a defendant's character. *Allen*, 301 Or at 575. Applying that reasoning, the court noted that hiring a willing accomplice to set fire to a building in order for the defendant to collect insurance proceeds is not a simple, impulsive criminal act. It requires premeditation, planning, concealment, and knowledge. In both the previous arson and the offense at issue in *Allen*, the defendant had to plan a crime of significant complexity, and in both cases part of that planning included establishing an alibi. In addition, the court reasoned, the jury could infer that the injury to the accomplice in the earlier arson led the defendant to develop the more sophisticated fire-starting technique that the accomplice in the later arson used. *Id.* at 575-76.

police officer found in the stairway in this case. That defendant dropped a crack pipe while talking with a police officer during a previous encounter is the kind of simple, impulsive criminal act that the Supreme Court contrasted with the carefully conceived and executed arson in *Allen*. *See Carreiro*, 185 Or App at 25 ("doctrine of chances" discussed in *Allen* applies when logical relevance of evidence rests on objective improbability of accident because similarities of two acts outweigh dissimilarities rather than on subjective probability based on defendant's character). Other than showing defendant's propensity to commit drug crimes, his prior actions when he encountered police officers do not make it either more or less likely that he owned the crack pipe that the officer found in the stairway. They do not give additional force to the inferences that arise from the fact that the officer found the pipe at a location where he had just seen defendant bend over. The trial court erred in admitting the evidence.[3]

■■ Nonetheless, the state argues, any error was harmless. Evidentiary error is harmless if there is little likelihood that it affected the outcome of the trial. *Carreiro*, 185 Or App at 25. The state points to other evidence of defendant's drug use that was admitted without objection. Primarily, that evidence is that defendant was excluded from drug-free zones and that he had previously pled guilty to a drug-related crime. The state also points to the police officers' testimony concerning defendant's actions immediately before they discovered the crack pipe and arrested him. That evidence does not make harmless the evidentiary error that we discussed above. The evidence concerning defendant's exclusion from a drug-free zone does not describe the specific offenses that led to defendant's exclusion, nor does it indicate that defendant uses crack cocaine rather than other drugs. The evidence concerning the discovery of the crack pipe supports an inference that defendant dropped the crack pipe where the officers found it. However, that inference is not so compelling that we can say that a jury would have found that defendant owned

---

[3] This case may be closer to *State v. Gailey*, 301 Or 563, 725 P2d 328 (1986), which the court decided the same day as *Allen*. In *Gailey*, the court held that evidence linking the defendant to a different burglary did not have any tendency to link him to the burglary for which he was on trial.

the pipe if it had not been presented with inferences regarding his propensity to use drugs that arose from the evidence of his two prior encounters with police. On these facts, the evidentiary error was not harmless.

 In his third assignment of error, defendant argues that the trial court erred in entering judgment on the criminal trespass charge. He asserts that there is no evidence that a person in charge of the premises asked him to leave before the officers arrested him. *See State v. Collins*, 179 Or App 384, 394-96, 39 P3d 925 (2002), *rev dismissed*, 335 Or 656 (2003) (construing relevant statutes to require person in charge of premises to make such a request). Defendant acknowledges that he failed to raise this argument at the trial court, but he asks us to review it as error apparent on the face of the record in light of *Collins*. To be apparent on the face of the record, error must be error of law, the point of law must be obvious—that is, not reasonably subject to dispute—and it must not require the court to search the record. *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). In *State v. Sweeney*, 188 Or 255, 71 P3d 168, *rev den*, 336 Or 146 (2003), we held that the issue was apparent on the face of the record. Although defendant does not mention *Sweeney*, we conclude that that case compels us to hold that the trial court erred in entering judgment on defendant's conviction for criminal trespass.

Conviction for criminal trespass in second degree reversed; conviction for possession of a controlled substance reversed and remanded for new trial.